Gregory G. Paul, SBN 233060
Paul Law Offices
1808 Wedemeyer Street, Suite 216
San Francisco, CA 94129
Tel: (844)374-7200
Fax: (888) 822-9421
gregpaul@paullaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

OMAR BIBI, M.D.,

        Plaintiff,

   vs.                                  Civil Action Number:

VxL Enterprises LLC
Daniel & Yeager, LLC,
Sycamore Provider Contracting, L.L.C.,
and Team Health, LLC.

        Defendants.

## COMPLAINT

AND NOW, comes the Plaintiff, Omar Bibi, M.D., by and through his undersigned counsel, Gregory G. Paul, and files the within Complaint for violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq* as amended, and the California Fair employment Housing Act (FEHA) , Cal. Gov't Code 12940(a) et seq.

## NATURE OF ACTION

1. This is a proceeding to remedy discrimination seeking declaratory and injunctive relief and for damages against defendants to redress the deprivation of rights secured to the plaintiff by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, and the California FEHA.  Plaintiff, Omar Bibi, M.D., seeks a declaratory judgment and injunctive relief to restrain Defendant from maintaining practices, policies, customs,

1

and usages, which discriminate against plaintiff because of his national origin, race and/or in retaliation for making complaints of discrimination.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 (4), Title VII and principles of pendent jurisdiction. Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to 42 U.S.C. § 2000e-5(f) and (g).

3. The plaintiff, Omar Bibi, M.D., has exhausted the administrative remedies as evidenced by both the United States' Equal Employment Opportunity Commission's and the California Department of Fair Employment and Housing Commission's Dismissal and Notice of Right to Sue.

4. Venue lies within this judicial district, since the substantial actions complained of herein occurred within the Northern District of California while Dr. Bibi worked at the San Quentin prison.

## PARTIES

5. Plaintiff, Omar Bibi, M.D., is an adult individual who resides in Tuscaloosa, AL 35406.

4. Defendant, VxL Enterprises LLC, is a company with its principal place of business located at 701 Kenmore Ave, Ste. 230, Fredericksburg, VA 22401 who contracted with the California Department of Corrections and Rehabilitation to provide staffing at multiple locations including the San Quentin prison.

5. Defendant, Daniel & Yeager, LLC, is a company with its principal place of business located at 6767 Old Madison Pike, Ste. 690, Huntsville, AL 35806 contracted to provide medical personnel and staffing.

2

6. Sycamore Provider Contracting, LLC, d/b/a Sycamore Independent Physicians, with its principal place of business at 4031 Parkway Drive, Suite B, Florence, AL 35630 is an entity contracted to provide medical personnel in the prison system including at San Quentin prison.

7. Team Health, LLC, with its principal place of business at 265 Brookview Centre Way, Suite 400, Knoxville, TN 37919, does business nationwide and in California, is leading physician practice.

## SUMMARY OF ACTION

8. Plaintiff Omar Bibi, MD (Dr. Bibi) is a 32-year-old Alabama-licensed physician. He is a U.S. Citizen and a resident of Tuscaloosa, Alabama. Dr. Bibi is of Tunisian decent (North Africa), holds a Tunisian passport and identifies as a Caucasian Arab.

9. Defendant VxL Enterprises LLC ("VxL") is based in Fredericksburg, Virginia. VxL is a security, logistics and services contractor that operates internationally. Beginning on or about July 2, 2020, VxL began a multi- million-dollar monthly contract with the California state prison system to provide CoVid-19 medical relief at the San Quentin Prison in Marin County, California, among other state prisons. The services provided under VxL's contract are federally funded under the CoVid-19 relief bills passed in 2020. VxL has in excess of 500 employees.

10. VxL set up what is essentially a field hospital on the San Quentin prison grounds in order to treat CoVid-19 diagnosed inmates, which, at times, consisted of one-half to two-thirds (or more) of the approximate inmate population of 3,000.

11. In order to staff its San Quentin operations with licensed medical providers, VxL entered into arrangements with so-called *locum tenens ("locums")* companies. *Locums* companies typically operate like a temporary staffing agency, placing physicians to work with

their clients, such as hospitals and other health care facilities. Defendant, Daniels & Yeager, LLC (D&Y), based in Huntsville, Alabama, is one such company. D&Y and its commonly owned and managed parent companies and affiliates, such as Team Health, have in excess of 500 employees.

12.     In the first week of July 2020, Dr. Bibi was in contact with D&Y about working on VxL's San Quentin contract. Dr. Bibi is board eligible in Internal Medicine and was able to practice in California on an emergency waiver. In order to be accepted and credentialed for the work, Dr. Bibi promptly completed all necessary paperwork and submitted all required licenses, records, and certificates. Ultimately, Dr. Bibi passed credentialing and contracted with D&Y to work thirty-two (32) straight twelve (12) hour shifts for $3000 per shift. In total, Dr. Bibi would have earned some $96,000 for working these shifts, beginning on July 20, 2020, and ending August 20, 2020.

13.     At all times relevant, and based upon the facts set forth below, VxL and D&Y were legally and practically "joint employers" of Dr. Bibi for the purposes of the work shifts at San Quentin. VxL supervised and controlled Dr. Bibi's on-site work. D&Y did not have any supervisory personnel on-site. VxL had (and exercised) the ability to direct and control the manner and extent of Dr. Bibi's work, provided a set shift and workplace, and allocated patients. VxL provided and arranged air transportation and employed a Chief Medical Officer to supervise Dr. Bibi and the other physicians. D&Y arranged for Dr. Bibi's hotel and rental car. VxL claimed and exercised the right to remove physicians from their scheduled shifts and D&Y (and presumably other *locum* companies) could not override or reverse VxL on such removals. Such was the case with Dr. Bibi.

14.     Dr. Bibi travelled to California in time for his first shift on July 20, 2020. Dr. Bibi's shifts were scheduled 7 am to 7 pm. The starting physicians were supposed to have

orientation, but the last structured orientation was supposedly held on July 17th. Despite submitting all information and materials on-time and completing all necessary tasks prior to his arrival, Dr. Bibi was not granted access to the Electronic Medical Records ("EMR") system, CERNER, until his July 24th shift. As such, Dr. Bibi's first four (4) shifts (July 20th - 23rd) were spent on administrative tasks, meetings, orienting and, at times, shadowing other established physicians.

15. VxL's Chief Medical Officer, Dr. Andre Pennardt (WM) arrived at San Quentin for his own orientation on July 22nd. On July 27th, Dr. Pennardt remarked to Dr. Bibi, "If you look up *Omar Bibi,* you find seven felonies." Dr. Pennardt told Dr. Bibi he was a former military physician and was currently an assistant director of an emergency medicine residency program in South Florida. Dr. Pennardt also told Dr. Bibi that he was a part-time sheriffs deputy, "not for the eighteen (18) bucks an hour, but 'because it's good to know people.'"

16. Dr. Pennardt criticized Dr. Bibi for engaging in activities such as leaving the premises briefly to get food and his own medications. From what Dr. Bibi was told by his fellow physicians, these brief errands were allowed before Dr. Pennardt's arrival as CMO. There were no published or established rules preventing such errands. Dr. Pennardt accused Dr. Bibi of being late and of "skulking" (basically the act of not working during the shift) and not wearing a protective paper suit in a certain area. Dr. Bibi denies these allegations or asserts that the so-called work rules were unevenly and discriminatorily applied. When Dr. Bibi pointed this out, Dr. Pennardt stated in a coy manner, "but I didn't see *them."*

17. It became apparent that Dr. Pennardt had a problem with Dr. Bibi because of his national origin or ethnicity. When Dr. Bibi prepared and brought his own lunch, as usual, on July 28th, Dr. Kevin Fellers (WM) remarked, "that looks good, you should open a

5

restaurant... " Dr. Pennardt, who was in earshot, stated that he was sure Dr. Bibi would serve a lot of hummus, but would make for a better gun runner or drug dealer.

18.     Dr. Bibi called his contact at D&Y, Nicole Seibert, on July 28th (the two spoke for 26 minutes and 23 seconds starting at 3:46 pm CDT) nearly all the time complaining about Dr. Pennardt's comments and expressing his frustration. Ms. Seibert seemed understanding and supportive and said she would call Scott LNU, the account manager, right after she hung up with him.

19.     Later, Scott LNU and Craig LNU at D&Y called Dr. Bibi and Craig LNU told him that he was terminated for cause and "there was nothing D&Y could do about it." When Dr. Pennardt walked Dr. Bibi out of the prison, he told Dr. Bibi that Drs. Enanore Okumagba **(BM)** and Fellers tried to show Dr. Bibi "the ropes" pertaining to the job. Neither Drs. Okumagba nor Fellers did any such thing. Upon parting, Dr. Pennardt told Dr. Bibi that Charles ("CJ") Bezak, VxL's on-site Program Manager terminated Dr. Bibi because he was "too much of a liability."

20.     Dr. Bibi was never warned, written up or reprimanded for any alleged conduct. The infractions cited by Respondents are either not infractions, the result of uneven enforcement or subterfuge for illegal discrimination and retaliation.

21.     Because of the facts set forth above, Dr. Bibi contends that his termination by VxL was illegal and discriminatory on the basis of his national origin and ethnicity (Tunisian/Arab). Further, Dr. Bibi contends that he was illegally retaliated against and terminated by VxL and D&Y because he complained to Ms. Seibert and she apparently followed up with VxL. Such a complaint is well-established protected conduct.

22.     Dr. Bibi has been damaged because he was not allowed to work his remaining shifts which would have paid him an additional $69,000.  Because Dr. Bibi reserved his

remaining shift dates through August 20th, he has not been able to fill them with other *locum* assignments, nor can he otherwise mitigate his damages.

23. Because Dr. Bibi made formal and informal complaints to Defendants about discrimination, he was terminated from his position at San Quentin resulting the denial of other employment under the scope of his employment contract, and denied subsequent employment opportunities by Defendants and/or affiliates in multiple states through the filing of this complaint.

## COUNT I

### Discrimination Under Title VII and FEHA

23. The plaintiff, Omar Bibi, M.D., repeats and realleges each and every allegation in the above paragraphs of this complaint with the same force and effect as if fully set forth herein.

24. By the acts above, the defendant, Defendants, have violated Title VII and the FEHA by discriminating against the plaintiff because of his ethnicity, national origin and race in the terms, conditions and privileges of her employment including his termination.

25. Specifically, Dr. Bibi is a member of a protected class, and terminated for alleged poor performance or rule violations and for which other non-protected employees were either not charged or received less discipline.

26. The Defendants' acts were with malice and reckless disregard for plaintiff's federally and state protected civil rights.

27. The plaintiff, Dr. Bibi, has and will continue to suffer irreparable injury and monetary damages as a result of the defendant's discriminatory practices unless and until this Court grants relief.

## COUNT II

### Retaliation Under Title VII and FEHA

28. The plaintiff, Dr. Bibi, repeats and realleges each and every allegation in the above paragraphs of this complaint with the same force and effect as if fully set forth herein.

29. Dr. Bibi made formal and informal complaints to Defendants about discrimination and was subsequently terminated from his position at San Quentin, other positions under the scope of his employment contract, and denied subsequent employment opportunities by Defendants and/or affiliates in multiple states through the filing of this complaint.

30. A causal connection exists between the complaints made and the discipline imposed including termination due to proximity in time, pretext, false explanations and inconsistent application of policies.

31. Dr. Bibi was terminated because of his complaints of discrimination and has suffered adverse employment actions as a result of this illegal conduct continuing to the present.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

a. Enter a judgment declaring that the acts and practices of the defendant are in violation of the laws of California and the United States;

b. To order the defendants, to reinstate plaintiff to his position he held prior to her discriminatory and retaliatory discharge and/or subsequent positions for which he was denied and expungement pursuant to Title VII of the Civil Rights Act and the FEHA;

c. To award plaintiff all of his pay and benefits absent the unlawful discrimination and retaliation; To award compensatory and punitive damages under all

applicable laws to make plaintiff whole and based upon Defendants' conduct that was malicious or undertaken with reckless disregard for his civil rights;

        d.    To award the plaintiff such other and further relief including equitable and injunctive relief as this Court deems just and proper including to back pay, reinstatement, front pay, and to permanently enjoin the defendants, and each of them, its officers, successors and assigns and all persons in active concert or participation with them from engaging in any employment actions or practices that discriminate on the basis of discrimination and retaliation;

        e.    Order the defendants to pay the costs and reasonable attorney's fees incurred by the plaintiff; and

        f.    Grant such other relief as the Court deems necessary and proper including reinstatement or front pay.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

PAUL LAW OFFICES


    /s Gregory G. Paul
GREGORY G. PAUL
CA SBN: 233060
1808 Wedemeyer Street, Suite 216
San Francisco, CA 94129
Tel: (844)374-7200
Fax: (888) 822-9421
gregpaul@paullaw.com

Attorney for Plaintiff

Dated:  June 17, 2021